# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

BRITTANY HAILEY, formerly )
referred to as JANIE DOE, )
                                          )
       Plaintiff, )
                                          )
                                          )
vs.                                       )    **CASE NO. 3:06-00202**
                                          )    **JUDGE KNOWLES**
                                          )
                                          )
BRYAN D. FARMER, )
                                          )
       Defendant. )

## MEMORANDUM OPINION

### I.  Introduction and Background

This matter is before the Court upon Plaintiff's "Motion for Default Judgment."  Docket No. 161.  Defendant Farmer has filed a Response to the Motion, the body of which states as follows:

> Comes the Defendant, BRYAN D. FARMER, and in response to the Motion for Default Judgment states as follows:
>
> 1.  The Defendant does not oppose the granting of the Motion.
>
> 2.  The Defendant will not file a responsive pleading to the Complaint.
>
> 3.  The Defendant prays the matter be set for a hearing on damages, if any.

*Id.*, p. 1-2.

This action was originally filed by John Doe and Jane Doe, as biological parents and

legal guardians of Janie Doe, a minor, against Defendant Bryan D. Farmer, individually, and the Clarksville Montgomery County School System. Docket No. 1. Plaintiffs subsequently filed an Amended Complaint. Docket No. 25. Plaintiffs raised federal claims under 42 U.S.C. § 1983 and 20 U.S.C. § 1681 (Title IX). Plaintiff also raised pendent state law claims under the Tennessee Human Rights Act (T.C.A. § 4-21-101 *et seq.*), a claim for malicious harassment pursuant to T.C.A. § 4-21-701, as well as claims for outrageous conduct, intentional and/or negligent infliction of emotional distress, and assault and battery. Plaintiff essentially alleged that Defendant Farmer, a physical education teacher at Northeast High School where Plaintiff was a student, had engaged in a sexual relationship her when she was 16 years of age and in the 11th Grade. Plaintiffs' Complaint sought compensatory damages, punitive damages, costs and attorneys' fees.

Subsequently, Defendant Clarksville Montgomery County School System filed a Motion for Summary Judgment as to the claims of John Doe and Jane Doe (Docket No. 93), and that Motion was granted by Judge Trauger with no opposition. Docket No. 127. Thereafter, Plaintiff Janie Doe agreed to dismiss her claims against Defendant Clarksville Montgomery County School System with prejudice (Docket No. 157) and Judge Trauger entered an appropriate Order (Docket No. 158). Thus, at the time of the damages hearing, the only claims remaining in the lawsuit were Janie Doe's claims against Defendant Farmer.

## II. Damages Hearing[1]

The Court held a hearing on damages on March 10, 2010. At the beginning of the

---

[1] While the damages hearing has not been transcribed, the hearing was recorded on audio tape.

hearing, Plaintiff's counsel announced that Plaintiff had attained 21 years of age, and identified her as Brittany Hailey (hereinafter "Plaintiff").

Plaintiff and her mother testified at the hearing. Defendant Farmer's counsel was present and questioned Ms. Doe. Defendant Farmer did not attend the hearing. Plaintiff testified in relevant part as follows.

Plaintiff met Defendant Farmer when she was 15 years old, and a sophomore at Northeast High School in Clarksville, Tennessee. As a high school sophomore, Plaintiff participated in student government, the dance team, and theater. Academically, she was an average student.

She could not recall how she first met Defendant Farmer, but testified that he would always speak to her in the hallways. At the time, Defendant Farmer was the Assistant Coach of the basketball team at Northeast High School.

When Plaintiff was a junior, she and Defendant Farmer began text-messaging. She did not realize that that was inappropriate, but considered it flattering, and she did not think about any consequences. In approximately October 2004, she and Defendant Farmer began having a sexual relationship that lasted approximately 6 months, until Spring or Summer 2005.

Prior to her relationship with Defendant Farmer, she had numerous friends and was involved in numerous activities. After their relationship became public, she lost "a lot" of friends, because she "just wanted to stay home." She "cut back" on school, and did not want to be part of the activities she had always been part of. She stated, "It just made everything a lot harder."

At some point, school officials called students to a meeting in the cafeteria, at which time a teacher distributed newspapers containing an article about Defendant Farmer. Plaintiff "had to

3

sit there," while "people were making comments." She knew that the article was about her.

After the situation became public, Defendant Farmer was criminally charged, and Plaintiff was required to participate in the criminal prosecution of Defendant Farmer. When her participation was required, she did not want to do anything else, and did not want to be with her friends. She wanted to sleep and she "hoped that it never came to that point."

She felt that she was depressed during this time. She was gaining and losing weight. Her sleeping habits were "off." All she wanted to do was stay by herself. She also cried "a lot." At times, she could not "get [herself] together." Her energy level dropped from "9-10," to "about a "2." She had no desire to do anything.

Prior to the relationship with Defendant Farmer, Plaintiff had intended to attend college, to major in education, and to eventually be a teacher. She graduated from high school in May 2006 when she was 17, and started college that Fall at Austin Peay State University. She left college after only 2 years.

During college she participated in the dance team. When she was on the dance team, she received a scholarship, and received free books. From an academic standpoint, she "did pretty good" in her first year of college. During the fall term of her freshman year at Austin Peay, her grade point average was 3.9 out of 4. But she got to the point in her second year when she lost her scholarship because Defendant Farmer's criminal trial was approaching, and it adversely affected her ability to do her school work and her grades at Austin Peay. During her second year, she knew that Defendant Farmer's criminal trial was approaching, and her grades started slipping because she became reclusive and "didn't want to do anything." She stopped going to classes and "would just stay asleep all day." These effects were caused by the upcoming

4

criminal trial and preparation for it.

She still gets upset any time she has to talk about the situation.

She has considered going back to school and becoming a teacher. At the time of the hearing, however, she did not see herself doing that, because of her relationship with Defendant Farmer. She has "trust issues" with "school systems," and is not sure she wants to place herself in that environment.

Plaintiff underwent counseling at a rape crisis center and at Child Protective Services from October 2005 to May 2006. The counseling helped "to a degree." She did not look forward to going to counseling, but sometimes felt better after talking about the situation. Her parents wanted her to seek treatment from a medical doctor, but she was simply tired of talking about it all the time, because it would make her "so upset."

She did not want to do anything with her family. Previously, she had eaten dinner every night with her parents. At that time, however, when she got home from school, she simply wanted to go to her room.

She told her parents about the relationship with Defendant Farmer after she had been "called out of school." Having to tell her parents about the relationship with Defendant Farmer was "horrible."

Her parents have supported her through the situation. They have also encouraged her to further her education, but she is not interested "right now."

As a result of the relationship with Defendant Farmer she lost "pretty much every friend [she] had in high school." Her friends attempted to invite her out to social events at first, but they stopped, which Plaintiff attributed to her telling them "No" so often. She is not now friends

5

with any of her old friends she grew up with. She "had to make all new friends" when she started college. Even then, it was hard for her to find a group that she really trusted. She had to "work on making friends when she got to college."

She perceived herself differently after the relationship with Defendant Farmer. She seemed not to have the energy she used to have. She had wanted to do so much and try so much, but then she felt lazy and did nothing. She testified, "It totally just crushed me."

On cross-examination, Plaintiff testified as follows.

She did not receive counseling while she was at Austin Peay. She did not investigate the counseling services there, and she was not aware whether Austin Peay had counseling available for students. She left Austin Peay because her grades fell the first semester of her sophomore year, as Defendant Farmer's criminal trial approached. She is aware that Defendant Farmer pled guilty to statutory rape.

At the time of the hearing in the case at bar, she had been out of school for approximately 2 years. During that 2 years, she had worked in Clarksville, and was able to support herself. At the time of the hearing, she was single and not living at home. Whether she will return to school is "up in the air."

Plaintiff's mother testified at the hearing as follows.

Prior to the relationship with Defendant Farmer, Brittany was "just your typical high school girl." She was full of energy, liked to be with her friends and liked to laugh. She was crying when she told her mother about the relationship with Defendant Farmer. After she told her parents about the relationship, it became a struggle to get her to go to school. At times, she would leave the house to go to school, but would call her mother and ask if she could come

home. Instead of watching television with her parents at night, she stayed in her room. She would not "talk about anything." There were large fluctuations in her weight. She had trouble sleeping and would sometimes come to her mother crying in the middle of the night. That went on "for a long time." She "just stopped wanting to do anything."

Her mother thought she was depressed, and her parents tried to get her to "see somebody," or "talk to somebody," but the more they did so, the more upset she became. Her parents tried to get her to seek further counseling, but Brittany did not want to talk about it. She told her mother that she felt "guilty and ashamed."

Brittany had always wanted to go to the University of Tennessee, because she had always been a Volunteer fan. She had always wanted to be a teacher. As the time approached, however, she never met any deadlines or filled out any applications (for U.T.), and Austin Peay became her option.

Initially, things were going very well at Austin Peay, and "it was nice to see Brittany coming back." She has encouraged Brittany to go back to school and further her education.

Plaintiff's behavior affected the whole family, because they were not close any more. Everybody tried to make things light and make it like everything was okay, but everyone knew it was not okay. When the family would go to basketball games or dinner, they knew everyone was talking about them.

Her freshman year at Austin Peay Plaintiff initially lived at home, not in a dorm. About 6 or 7 months later, she moved into an apartment, with a roommate. She had a $500 scholarship the first year, a $1,000 scholarship the second year, and for both years she got her books free through the Athletic Department, as a member of the dance team.

7

Plaintiff's counsel also read portions of a deposition given by Defendant Farmer on August 13, 2009. Defendant Farmer testified that he had written a love letter to a student at Huntland High School, but that he had never had an inappropriate relationship with a student there. Defendant Farmer testified that, at the time, the student at Huntland was 18 years old. This situation occurred just prior to Defendant Farmer's employment with the Clarksville Montgomery County School System. At the time, Defendant Farmer was an elementary school teacher, not a high school teacher. Defendant Farmer again testified that the woman involved was 18 and was being home schooled. He admitted that he was in a sexual relationship with her and spent the night at her house.[2] Defendant Farmer also testified that he was involved romantically with 2 students other than Plaintiff at Northeast High School.

While Defendant Farmer realized that it is against the law to have sex with someone under 18, he testified in his deposition:

> I never asked Brittany to come [to his residence]. I just didn't, you know, when she asked me if she could come I didn't say no. I didn't initiate it.

During Plaintiff's closing argument, the Court inquired as to whether Plaintiff's counsel wished to state a specific amount of compensatory or punitive damages he thought would be appropriate. Plaintiff's counsel referred to a jury verdict in *Matthew Devine v. Steven Craig Fults,* Civil Action No. 3:04-0143, United States District Court for the Middle District of Tennessee. In that case, the jury returned a verdict of $1.5 million dollars in compensatory damages and $7 million dollars in punitive damages against Defendant. Plaintiff's counsel

---

[2] During closing argument, Plaintiff's counsel stated that the Huntland student was 17, not 18, although he conceded that there was no proof in the record to show this.

8

stated that he thought "somewhere along these lines would be consistent and fair."

Defendant's counsel essentially argued that the damages seemed speculative.

At the end of the hearing, the Court allowed Defendant's counsel 14 days in which to submit a brief with regard to *Fults*, since counsel stated that he was not familiar with that case. The Court also gave Plaintiff's counsel the opportunity to respond to that filing, within 10 days of receipt of the filing. Defendant's counsel did not file any written materials with regard to *Fults*, nor did Plaintiff's counsel.

### III. Analysis

As the United States Supreme Court has stated, "[W]hen § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." *Memphis Community School District v. Stachura,* 477 U.S. 299, 306 (1986). Both compensatory and punitive damages are available under § 1983, as they are under state law claims Plaintiff has raised. *Id*. Compensatory damages are available for mental and emotional distress. *Carey v. Piphus,* 435 U.S. 247, 263-64. Punitive damages are available if a Defendant has acted maliciously, wantonly, or oppressively, or has acted in reckless indifference to federally protected rights. *Stachura, supra*., 477 U.S. at 306 n.9; *Gordon v. Norman,* 788 F.2d 1194 (6th Cir. 1986). Additionally, a § 1983 plaintiff has an obligation to mitigate his or her damages. *Miller v. Lovett*, 879 F.2d 1066, 1070-71 (2nd Cir. 1989).

In the case at bar, Plaintiff offered no proof as to any special damages, such as lost earnings, medical expenses, or loss of earning capacity. While Plaintiff did not present any expert medical proof with regard to her claims of mental and emotional distress, her own

9

testimony established that she did suffer such injuries, as has been discussed above.

Plaintiff was clearly the innocent victim of a sexual predator. The events that occurred had a significant impact upon her life. At the same time, however, there are a number of points the Court must consider in determining an appropriate award of damages.

First, the Court observed Plaintiff's demeanor closely while she was testifying at the hearing. While Plaintiff had testified that she became upset any time she had to talk about these events, Plaintiff did not appear to be upset while testifying at the hearing. She showed essentially no emotion while testifying.

Second, Plaintiff testified that she had undergone counseling from October 2005 to May 2006. While she sometimes felt better after talking about the situation in counseling, she became tired of talking about it all the time, because it would make her "so upset." Her parents wanted her to seek treatment from a medical doctor, but she did not do so. Moreover, she was not even aware as to whether Austin Peay had counseling services that might have been beneficial to her.

Third, Plaintiff's grade point average her first semester at Austin Peay was 3.9. She was able to move into an apartment with a roommate about 6 or 7 months after she started at Austin Peay. While she testified that her grades suffered because of the upcoming criminal proceedings, she failed to offer any specific proof that would establish a direct relationship between her grades dropping and her participation in the criminal proceedings for Defendant Farmer. For example, there was no testimony about her grade point average during her senior year in high school, the second semester of her freshman year at Austin Peay, the first semester of her sophomore year, or the last semester of her sophomore year.

As discussed above, the sexual relationship of the parties occurred from approximately

10

Case 3:06-cv-00202   Document 173   Filed 09/30/10   Page 10 of 13 PageID #: 1462

October 2004 until Spring or Summer 2005.  Approximately a year and-a-half after the relationship ended, Plaintiff was able to make essentially straight A's her first semester in college.  Her grades at Austin Peay began to suffer only when she was faced with the prospect of participating in the criminal proceedings against Mr. Farmer.

While there was no specific proof as to when those criminal proceedings occurred, it seems obvious that they had ended at least two years before the damages hearing in the case at bar.  Presumably, most of the damages Plaintiff suffered had ended two years prior to the hearing.  During the two years between the time she dropped out of Austin Peay and the time of the hearing, she had worked in Clarksville, was able to support herself, and was not living at home.

Plaintiff's testimony concerning her emotional distress focused on the period of time at or before she dropped out of Austin Peay in late Spring 2008.  For example, Plaintiff did not testify at the hearing that she was continuing to have trouble sleeping, depression, crying spells, etc.  The main "long term" damage Plaintiff discussed at the hearing was the fact that she may have lost interest in pursuing a career as a teacher.  Even that, however, is "up in the air."

Fourth, while Plaintiff's mother and Plaintiff's counsel implied that she would have gone to U.T. and not Austin Peay had these incidents not occurred, Plaintiff never actually testified that that was true.  Plaintiff's mother discussed Plaintiff's strong desire to go to U.T. at different points during her testimony, but Plaintiff herself never mentioned this desire.  In fact, when Plaintiff's counsel questioned Plaintiff about her previous plans for a career after high school, she stated in part, "I was planning on attending college.  I hadn't really set my mind to what school yet."

11

Case 3:06-cv-00202   Document 173   Filed 09/30/10   Page 11 of 13 PageID #: 1463

Additionally, when Plaintiff's mother was testifying, the Court inquired as to why Plaintiff would not have pursued going to U.T. so that she could essentially get away from Clarksville and make a fresh start. Plaintiff's mother testified that she was not sure Plaintiff could have stood being away from home, but she also stated that she did not know whether she would have wanted to see Plaintiff leave. But, while Plaintiff lived at home her first semester at Austin Peay, she moved out into an apartment with a roommate during the second semester of her freshman year (Spring 2007) and did not return to live at her parents' home until January 2009.[3]

While Plaintiff cited *Fults*, there are significant differences between that case and the case at bar. In *Fults*, the minor plaintiff had been diagnosed with attention deficit hyperactive disorder ("ADHD"), and "oppositional defiant disorder." When plaintiff in *Fults* was 15 years old, a teacher at his school began a homosexual relationship with him and "perpetrated his first illicit act on [plaintiff]." Docket No. 96, p. 3. The Sixth Circuit referred to plaintiff as "a boy who was raped repeatedly by [defendant]." *Doe v. Fults*, No. 07-5177, United States Court of Appeals for the Sixth Circuit, filed December 10, 2007. Although it is unclear from the record in *Fults*, it appears that this conduct continued for several years. Furthermore, the *Fults* Court had entered a default against defendant and, unlike the case bar, plaintiff's damages were set by a jury. Defendant, who was not represented by counsel at the time of the jury trial on damages, apparently represented himself. Presumably, the jury's verdict as to damages was based upon the proof presented to the jury at the trial. The Court, however, has no information as to what

---

[3] There was no proof that Plaintiff's returning to live at her parents' home in January 2009 was related to injuries she suffered as a result of the incidents at issue in this action.

12

damages plaintiff in *Fults* proved.

For the foregoing reasons, the Court concludes that Plaintiff is entitled to recover $35,000 in compensatory damages and $15,000 in punitive damages.

An appropriate Order will be entered.

IT IS SO ORDERED.

E. Clifton Knowles
United States Magistrate Judge